UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CRIMINAL ACTION NO. 04-10314-RCL


**UNITED STATES OF AMERICA**

**v.**

**MANUEL PINALES**


**MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION**[1]


**APRIL 21, 2005**


**BOWLER, U.S.M.J.**

On or about October 12, 2004, defendant Manuel E. Pinales (the "defendant"), was arrested pursuant to a four count Indictment returned in this district on October 6, 2004. The Indictment charges the defendant and four other individuals. Count One of Indictment charges the defendant and codefendants Jose Antonio Cruz, a/k/a "Eduardo LNU," (codefendant "Cruz"),

---

[1] This ORDER pertains solely to defendant Manuel Pinales. The four codefendants submitted to voluntary detention.

Luis R. Clas, a/k/a "Cuba," (codefendant "Clas"), Richard Pena (codefendant "Pena") and Tajh M. White (codefendant "White") (collectively the "defendants") with conspiracy to distribute cocaine in violation of Title 21, United States Code, Section 846.  Counts two and four charge the defendant and codefendant Clas with distribution of cocaine in violation of Title 18, United States Code, Section 841(a)(1) and aiding and abetting in violation of Title 21, United States Code, Section 2.  The defendant is subject to the forfeiture provision of Title 21, United States Code, Section 853.

The defendant had his initial appearance before this court on October 12, 2004.  He was represented by retained counsel. The government moved to detain the defendant on the grounds that there is no condition or combination of conditions that will reasonably assure (1) the safety of any other person and the community and (2) the appearance of the defendant.  18 U.S.C. §§ 3142 (f)(1)(B), (f)(1)(C) and (f)(2)(A).  The government moved for a three day continuance and by agreement of counsel a detention hearing was scheduled before this court on October 18, 2004.

On that date defense counsel requested a continuance and the matter was continued until October 22, 2004.  On that date the detention hearing commenced and at the conclusion of the day the hearing was continued by agreement of counsel until October 29,

2004.

By agreement of counsel there was an additional continuance until November 1, 2004.  The government offered an affidavit in lieu of testimony and the defense called the affiant.  This court heard argument and took the matter of detention under advisement.

DISCUSSION

I.    A.  Under the provisions of 18 U.S.C. § 3142(c), "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person."  Thus, a defendant must be released under the provisions of 18 U.S.C. § 3142(b) or (c), or be detained pending trial under the provisions of 18 U.S.C. § 3142(e) and after a hearing pursuant to 18 U.S.C. § 3142(f).  See 18 U.S.C. § 3142(a).

Under 18 U.S.C. § 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds one of the following three conditions to be true that: (1) by clear and convincing evidence, after a detention hearing under the provisions of § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C. § 3142(b) or (c)) will reasonably assure the safety of any other person or the community . . .;" (2) by a preponderance of the evidence, after a detention hearing under the provisions of 18 U.S.C. § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C.

3

§ 3142(b) or (c)) will reasonably assure the appearance of the person as required . . .;" or (3) there is a serious risk the defendant will flee.[2]  This determination is made by the court at the conclusion of a detention hearing.

     B.   The government is entitled to move for detention in a case that:

     (1)  involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);[3]

     (2)  involves an offense punishable by death or life imprisonment;

     (3)  involves an offense prescribed by the Controlled

---

[2]  The distinction between the former and the latter are made clear by the very language of 18 U.S.C. § 3142(f).  In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u> . . .." (Latter emphasis added.)  By not requiring that same standard <u>vis a vis</u> an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence-- applied.  That is precisely the holding in the Second Circuit.  <u>See</u> <u>e.g.</u>, <u>United States v. Jackson</u>, 823 F.2d, 5 (D.C.Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. 1986); <u>see</u> <u>also</u> <u>United States v. Patriarca</u>, 948 F.2d 789, 792 (1st Cir. 1991).

[3]  Section 3156 of Title 18 of the United States Code defines a crime of violence as:

     (A)  an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, or

     (B)  any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

Substances Act or the Controlled Substances Import and Export Act for which the maximum authorized punishment is imprisonment for ten years or more;[4] or

(4) involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court <u>sua</u> <u>sponte</u> may move for, or set, a detention hearing where there is a serious risk of flight, or a serious risk of obstruction of justice or threats to potential witnesses. <u>See</u> 18 U.S.C. § 3142(f).


C. In determining whether there are conditions of release which will reasonably assure the appearance of the person and the safety of any other person and the community, this court must take into account:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

> (2) the weight of the evidence against the accused;

---

[4] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. <u>See</u> <u>United States v. Moss</u>, 887 F.2d 333, 336-7 (1st Cir. 1989).

(3) the history and characteristics of the person, including--

    (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

    D.  The burden of persuasion remains with the government to establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  The burden then rests on the defendant to come forward with evidence indicating that these general findings are not applicable to him for whatever reason advanced.  The government must satisfy its position with respect to risk of flight by a preponderance of the evidence and with respect to dangerousness by clear and convincing evidence.  See supra footnote 3.  This court must then weigh all relevant factors [set forth under § 3142(g)] and

determine whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." The decision is an individualized one based on all relevant factors. <u>United States v. Patriarca</u>, 948 F.2d 789, 794 ( Cir. 1991); <u>see</u> <u>United States v. Jessup</u>, 757 F.2d 378, 387-88 (1st Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in <u>physical violence</u>. Conversely, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate), on S. 215. 98th Congress, Report No. 98-147 (May 25, 1983):

> The concept of defendant's dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger <u>that the defendant might engage in criminal activity to the detriment of the community</u>. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.... The Committee also <u>emphasizes</u> that the risk that a defendant will <u>continue to engage</u> in drug trafficking constitutes a danger to the "safety of any other person or the

7

community."

Id. (Emphasis added; footnotes omitted); see United States v. Patriarca, 948 F.2d 789, 792 n.2 (1st Cir. 1991) (danger to community does not refer only to risk of physical violence); see also United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990) (stating danger in context of 18 U.S.C. § 3142(g) not meant to refer only to physical violence); United States v. Hawkins, 617 F.2d 59 (5th Cir. 1980), (trafficking in controlled substances).[5]

The issue critical to determining whether to detain a defendant is therefore, whether, with respect to the defendant, based on the guidelines set forth supra in part C of this Order, any condition or combination of conditions of release exist that will reasonably assure the safety of any person and the community and the presence of the defendant. 18 U.S.C. § 3142(e).

E. "Where, as here, a defendant is charged with a controlled substance offense punishable by a maximum term of 10 years or more, the government is aided by § 3142(e)'s rebuttable flight presumption."[6] United States v. Palmer-Contreras, 835

---

[5] A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of moved under 18 U.S.C. § 3142(f)(l), and the judicial officer has determined that a hearing is appropriate under that latter section. See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988).

[6] The presumption reflects Congressional findings that persons who deal in drugs often have the necessary resources and foreign ties to escape to other countries. United States v. Palmer-

F.2d 15, 17 (1st Cir. 1987) (per curiam).  The presumption is not limited to risk of flight.  Rather, the presumption has two components.  One component is that the person poses a risk of flight and the second component is that the person "represents a danger to the community."  <u>United States v. Moss</u>, 887 F.2d 333, 335 n.3 (1st Cir. 1989) (per curiam).

Thus, under section 3142(e) the judicial officer must consider the rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act <u>or</u> an offense under 18 U.S.C. § 924(c), the use of a firearm to commit a felony.  18 U.S.C. § 3142(e).

The presumption raised as a result of finding probable cause that a defendant committed the relevant narcotics offense is always entitled to evidentiary weight, the amount of which, if at all, depends on the nature of the production by the defendant and the other factors set forth under § 3142(g).  The defendant, however, "bears only the burden of production."  <u>United States v.</u>

<hr>

<u>Contreras</u>, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam).  Consequently, imposing "a large bond is often ineffective in deterring flight."  <u>United States v. Perez-Franco</u>, 839 F.2d 867, 869-70 (1st Cir. 1988).

Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988).  As explained by
the United States Court of Appeals with regard to the statutory
presumption of section 3142(e):

> Section 3142(e), however, only imposes a burden of
> production on a defendant.  The burden of persuasion
> remains with the government.  Nevertheless, even after
> a defendant has introduced some evidence to rebut the
> flight presumption, the presumption does not disappear,
> but retains evidentiary weight--the amount depending on
> how closely defendant's case resembles the congressional
> paradigm, Jessup, 757 F.2d at 387--to be considered along
> with other factors.

United States v. Palmer-Contreras, 835 F.2d at 17-18; see also
United States v. Perez-Franco, 839 F.2d at 869-70.

Finally, it is important to note that the presumption is
triggered by the statutory penalty prescribed irrespective of the
actual or likely sentence imposed upon the particular defendant.
See United States v. Moss, 887 F.2d 333, 337 (1st Cir. 1989) (per
curiam).  The fact that a defendant may receive a sentence of
less than ten years does not make the presumption inapplicable.
Id. at 337.  Rather, this court may consider such a factor with
regard to the weight this court gives to the presumption.  Id. at
337.


II.  The defendant, Manuel E. Pinales, is 42 years of age.  He
was born in the Dominican Republic on January 7, 1963.  He
attended school in his native country through the eleventh grade
and studied English as a second language after coming to the

United States.

According to records of the Bureau of Immigration and Customs Enforcement of the Department of Homeland Security, the defendant entered the United States on August 12, 1990. However the Pretrial Services report notes that the defendant stated that he actually entered the United States in 1986. The defendant is a legal permanent resident of the United States. He told Pretrial Services that he has traveled to the Dominican Republic on a annual basis since 1990 to visit his family.

The defendant is one of seven children. His parents and five of his siblings reside in the Dominican Republic. The defendant has one sister residing in Roslindale. The defendant has six children ranging in age from six to 20. The two oldest children reside in the Dominican Republic and the other four reside in Massachusetts. From 1988 to 1995 the defendant was married to Evette Hugarte.[7]

At the time of his arrest the defendant was residing in a duplex style home located at 1828 River Street in Hyde Park. He has owned the home since 1999. Residing with the defendant are two of his children, his fiancée, Esmerdy Villar, her child from a previous relationship and her father, Jose Villar. Prior to moving to Hyde Park, the defendant lived in Mattapan for five

---

[7] There is no information in the Pretrial Services report indicating whether all of the defendant's six children were born of this marriage.

years.  He also reports having resided in Allston and Roxbury.
The defendant receives $1,700 in rental income from the other
unit in his duplex residence.

Since 1995 the defendant has owned and operated the Park
Ave. Market in Roslindale.  He noted that he earned $49,000 from
the market last year.  The defendant is a partner in a business
known as E & M Distributors, located at 41 Burrell Street in
Roxbury, which is in the business of importing miscellaneous
household products from the Dominican Republic.  The defendant
was unable to report his annual income from E & M.  The defendant
has approximately $61,000 in business debt in the form of bank
loans.  He maintains several lines of credit.  He has $5,000 in
personal credit card debt.

The defendant owns two vehicles, a 1997 Chevrolet Silverado
pickup truck and 1996 Four Runner.  In addition to his residence
the defendant owns a condominium at 594 American Legion Highway
in Roslindale.  He earns $1,300 a month in rental income from
this property.

The defendant does not have a prior criminal record.  Drug
charges against the defendant in 1988 and 1989 were dismissed.


III.  The relevant evidence at the detention hearing showed the
following.

In lieu of calling a witness the government offered the an

12

affidavit ("the Affidavit") in support of detention authored by Special Agent Jean Drouin ("Drouin") of the Drug Enforcement Administration ("DEA").  The 37 page Affidavit was admitted as Government Exhibit # 1.  Because the conversations in the Affidavit are too lengthy to set forth in this ORDER, the Affidavit is incorporated by reference in this ORDER.

In summary the Affidavit sets forth in detail the scope of the investigation which commenced in March 2004 and culminated in the arrest of the defendants in October of 2004.  During the investigation law enforcement authorities utilized physical surveillance and court-authorized interception of cellular telephones, specifically six cellular telephones including two used by the defendant.

According to the Affidavit, the investigation revealed that the defendant was the leader of an organization ("the Pinales Organization") that received quantities of cocaine in amounts over 20 kilograms at a time and then distributed the cocaine in Boston, Lowell, New Bedford, Rhode Island and Connecticut from at least June 2004 until October 8, 2004, when the defendants were arrested.

The Affidavit states that the last delivery of cocaine received by the Pinales Organization arrived on August 28, 2004 and was believed to have been a quantity of 80 kilograms.  The Affidavit alleges that Pinales and the codefendants were:

13

> . . . involved in transporting large amounts of
> cash drug proceeds to individuals in New York
> City in payment for the cocaine that the
> PINALES organization received on credit.
> The PINALES organization distributed
> kilogram quantities of cocaine to their (sic)
> customers on credit and then, after their (sic)
> customers in turn sold the cocaine, they
> collected the money from such customers
> in payment for the cocaine.

Drouin supports his assertions at the outset of the Affidavit by setting forth the content of a series of court authorized interceptions of telephone calls from five cellular telephones commencing on June 30, 2004. According to the Affidavit, telephones one and four were used by the defendant. The text of each intercepted call is followed by Drouin's interpretation of the content.

Throughout the conversations between the defendants and between the defendants and others there are numerous references to "Manuel." In the Affidavit, Drouin states that the references to Manuel are to the defendant. It is clear from the context of the conversations that Manuel is the leader of the organization and that he directs others to perform certain functions in furtherance of the organizations's activities.

The intercepted conversations set forth in the Affidavit commence on June 30, 2004 and conclude on October 6, 2004, the date the Indictment was returned. The name Manuel first appears in a conversation recorded on July 1, 2004 and continues to appear through September 29, 2004. Conversations on the

14

defendant's own phones appear from July 8, 2004 to October 4, 2004.

Throughout the conversations the speakers utilize terms such as "the thing,"[8] "pesos,"[9] "songs,"[10] "CDs,"[11] "carrito"[12] and "rubia."[13]  When these terms are considered in the totality of all the conversations it is abundantly clear that the parties are speaking in code.  Together with the frequent use of numerical references interspersed in the conversations, it is obvious that the conversations refer to drug trafficking by utilizing coded words.  Over the four months from July of 2004 to October of 2004 the defendant is frequently recorded making use of these speech patterns.

This court notes that the majority of the conversations are between the various defendants named in the above-captioned

---

[8]  See conversation of June 30, 2004, received on Target Telephone 2, at paragraph 9 of the Affidavit.

[9]  See conversation of July 1, 2004, received on Target Telephone 1, at paragraph 9 of the Affidavit.

[10]  See conversation of July 1, 2004, received on Target Telephone 1,  at paragraph 9 of the Affidavit.

[11]  See conversation of July 1, 2004, received on Target Telephone 1,  at paragraph 9 of the Affidavit.

[12]  See conversation of July 8, 2004, placed on Target Telephone 1,  at paragraph 10 of the Affidavit.

[13]  See conversation of July 15, 2004, placed on Target Telephone 2,  at paragraph 12 of the Affidavit.

Indictment, although some of the conversations involve other individuals.  Taken in their totality, it is clear from the conversations that the represent the activities of an ongoing operation to distribute narcotics.

In addition, when the conversations set forth in the Affidavit are read in chronological order it not difficult to see the defendant's role as the leader of the organization and to ascertain the scope of the organization's activities along with the specifics of various transactions.

On October 8, 2004, law enforcement agents executed several search warrants in relation to the investigation.  Among the sites searched were the defendant's residence at 1828 River Street in Hyde Park and the defendant's place of business, the Park Ave. Market ("the Market") at 631 Hyde Park Avenue in Hyde Park.  The searches resulted in the seizure of $127,000 in cash from the defendant's residence and $6,800 in cash and drug ledgers from the Market.

On the same date law enforcement agents executed a search warrant for an apartment at 115 Navarre Street, which was believed to be the residence of codefendant Clas.  The search resulted in the recovery of over 50 kilograms of cocaine, $86,200 in cash, a United States passport, airline tickets and a lease for the premises in the name of codefendant Clas

On cross examination it was established that Drouin has been

16

employed by DEA since November of 1997, that he is a graduate of the University of Southern Maine and that he served as a police officer in Atlanta, Georgia for three years before joining DEA. Drouin noted that he does not speak Spanish but that he has read the English language version of the "line sheets" of the intercepted conversations.

Drouin noted that he reviewed the line sheets with other law enforcement agents and they agreed with his interpretation of the meaning of the words used by the participants in the conversations. Drouin agreed with defense counsel that the actual word "cocaine" was not used in the conversations. Drouin noted that while the name Pinales does not appear in the conversations of June 30, 2004 and July 1, 2004, the names "Manuel" and "Manny" do appear.

At the resumed hearing on November 1, 2004, Drouin made two changes to the Affidavit. The first change occurred at paragraph 15 where the time was changed from 6:26 p.m. to 7:48 p.m. The second correction reflected a change in the amount of cocaine recovered on October 8, 2004, during the search conducted at the home of codefendant Clas at 115 Navarre Street. Drouin stated that the correct amount of cocaine recovered was 57 kilograms.[14]

---

[14] Paragraph 23 refers to the multiple kilograms of cocaine and one kilogram of heroin. On December 14, 2004, the government filed a motion in open court to correct the record. According to the motion, the one kilogram of heroin was in fact cocaine, although it was originally believed to be heroin when it was field tested. The motion does not appear on the docket and the government is directed to refile the motion.

The government offered redacted line sheets of the
intercepted calls.  The line sheets were admitted as Government
Exhibit # 2.  The government offered two additional items.  The
first appears to be an electoral registration card from the
Dominican Republic in the name of Manuel Emilio Pinales Diaz.
The second is a blank check on the Banco de Reservas de la
Republica Dominicana, Bani, R.D.  The documents were admitted as
Government Exhibit # 3.

The electoral card bears two dates, 09/12/2002 and
07/02/2003.  The check bears the printed name Manuel Emilio
Pinales Diaz, Cta. Hacienda Diaz.

In further cross examination defense counsel established
that Drouin has not conducted a financial examination of the bank
account reflected in Government Exhibit # 3 nor does he know the
balance or activity of the account.

Defense counsel offered a set of corporate documents from
the Office of the Secretary of State of Massachusetts relating to
E & M Distributors.  The documents, which reflect that the
business, located at 41 Burrell Street in Roxbury, was
incorporated on August 4, 2003, were admitted as Defendant's
Exhibit # A.  The documents list Manuel Pinales as President and
Treasurer of E & M distributors, which is described as a domestic
partnership for profit.

IV.  The return of the Indictment in the United States District
Court for the District of Massachusetts in this case establishes
the existence of probable cause that the defendant committed the
crimes for which he is charged in the Indictment.

The United States has moved for detention pursuant to 18
U.S.C. §§ 3142(f)(1)(B), (f)(1)(C) and (f)(2)(A).  The government
must prove by clear and convincing evidence that if released the
defendant would pose a serious danger to any person or the
community.

In contradistinction, with regard to risk of flight the
court need only find by a preponderance of evidence that the
defendant, if released, constitutes a serious risk of flight or
failure to appear.  The two different standards are used because
of the clear language expressed in the last paragraph of 18
U.S.C. § 3142(f) which states "that no condition or combination
of conditions will reasonably assure the safety of any other
person and the community shall be supported by clear and
convincing evidence."  Congress, by not attaching that language
to the risk of flight clause, infers that a lower standard of
proof is all that is necessary to establish the government's
case.

A. Danger to the Community

19

This court first addresses the likelihood that the defendant, if released, would be a danger to another person or the community.

The weight of the government's case against the defendant is strong.  Based on numerous court authorized intercepted telephone conversations, it appears that the defendant is the leader of a well organized narcotics trafficking operation.  The amount of cocaine seized from the apartment of codefendant Clas on October 8, 2004, over 50 kilograms, is staggering.  The Affidavit suggests that the organization took delivery of 80 kilograms of cocaine in August of 2004.  The movement of the cocaine is believed to have been recorded on a surveillance camera, according to the Affidavit.

In addition to the cocaine seized, $127,000 in United States currency was seized from the defendant's home and drug ledgers were seized from the Market, the defendant's place of business.

The conversations and seizure of a huge quantity of cocaine, currency and drug ledgers strongly suggest that the defendant was the leader of a well organized operation engaged in the distribution of large quantities of cocaine into the community.

The defendant did not any offer any evidence to rebut the presumption that he has committed a serious drug crime.  Based on the totality of the evidence the government has satisfied this court by clear and convincing evidence that no condition or

20

combination of conditions will reasonably assure the safety of any person or the community if the defendant is released.

    B. Risk of Flight

    Next, this court turns to risk of flight.

    The defendant is a citizen of the Dominican Republic, where his parents, five of his siblings and two of his children continue to reside.  Over the past 14 years he has made annual trips to his native country, where he maintains business contacts through E & M Distributors.  Government Exhibit # 3 suggests that defendant has maintained his right to vote in Dominican elections as recently as 2003 as well a bank account in the Dominican Republic.

    If convicted, the defendant faces a lengthy period of incarceration followed by almost certain deportation.  This in itself serves as a motivation to flee.

    It would also appear that the defendant has access to substantial amounts of cash based on the currency seizures made from his home.  In addition, the defendant has real estate that could be liquidated to provide another source of cash.  The defendant maintains lines of credit which also provide him with access to ready cash.  The availability of funds would certainly facilitate flight.  Government Exhibit # 3 also suggests that the defendant may continue to maintain a checking account in the

Dominican Republic which would facilitate his ability to maintain a lifestyle outside the United States.

Although the defendant has ties to the community, in the form of his business and real estate as well as his girlfriend, this court is not convinced that they are strong enough to hold him in the face of a possible lengthy period of incarceration followed by almost certain deportation.

Based on the totality of the circumstances this court finds by a preponderance of the evidence that there is no condition or combination of conditions that will assure the appearance of the defendant as required.

V. <u>Conclusion</u>

The government has satisfied this court by clear and convincing evidence that no condition or combination of conditions of release set forth under 18 U.S.C. § 3142(b) or (c) will reasonably assure the safety of any other person or the community if the defendant is released.  In addition, this court has found, at least by a preponderance of the evidence, that there is no condition or combination of conditions that will assure the appearance of the defendant as required.

Having evaluated the factors set forth in 18 U.S.C. § 3142(g), this court orders the defendant detained subject to the following conditions:

(1)   The defendant be, and hereby is, committed to
the custody of the Attorney General for
confinement in a corrections facility, separate,
to the extent practicable, from persons awaiting
or serving sentences or being held in custody
pending appeal;


(2)   The defendant be afforded reasonable opportunity
for private consultation with his counsel; and


(3)   On Order of a court of the United States or on
request of an attorney for the Government, the person
in charge of the corrections facility in which the
defendant is confined deliver the defendant to an
authorized Deputy U.S. Marshal for the purpose of any
appearance in connection with a court proceeding.


/S/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

23